HAMILTON NATIONAL BANK ET AL., APPELLANTS, V. AMERICAN LOAN & TRUST COMPANY ET AL., APPELLEES.

FILED OCTOBER 22, 1902. No. 11,993.

Commissioner's opinion, Department No. 1.

1. Constitutional Provisions: CONSTRUCTION: ORDINARY MEANING: CONTEXT: TECHNICAL SENSE. In construing constitutional provisions, the rule prevails that words shall be given their ordinary meaning, except where the context makes it plain that they have been used in a technical sense.

2. What Constitutes a Bank: COMMERCIAL PAPER: NEGOTIATION OF LOANS: SELLING EXCHANGE. To buy and sell commercial paper, to make and negotiate loans, to receive money to be transferred to and paid at other places, to buy and sell exchange upon other cities in this and foreign countries, to receive money on deposit, and to pay the same out upon checks or orders, are each banking functions; but it is not necessary, in order to constitute a corporation a banking institution within the meaning of section 7, article 11b, of the constitution, that it shall exercise all of these functions.

3. ———: STATUTE: CHARTER: CONSTRUCTION BY OFFICERS. In determining whether or not a corporation is a banking institution within the meaning of section 7, article 11b, of the constitution, the court will look to its articles of incorporation, its declared objects and purposes, the character of the business transacted by it, and even the construction which the officers themselves, in their management of its affairs, place upon its charter powers, if this construction is not unwarranted by the language of its charter.

4. Corporation: NATURE OF BUSINESS: BANK: LIABILITY OF STOCKHOLDERS. A corporation filed articles providing, among other things, that the general nature of its business should be to make and negotiate loans, to purchase and sell notes, mortgages, stocks and bonds, to borrow money and issue its own obligations therefor, to receive money on deposit, and to execute trusts. It received money on deposit, and paid the same out on checks; it bought and sold commercial paper; it made and negotiated loans; it bought and sold exchange upon other cities,

and also transacted much of the business of a loan and trust company. It designated itself a "loan and trust company." *Held*, That it was a bank, and its stockholders were liable under the provisions of section 7, article 11*b*, of the constitution.

5. **What Constitutes Res Judicata: IDENTICAL ISSUE: IDENTITY OF PARTIES.** In order that a judgment in a prior suit may be a bar to a subsequent action, it must appear either by the record, or by clear and satisfactory evidence, that the identical issue presented by the subsequent suit was involved or adjudicated in the prior suit, and that both actions are between the same parties or their privies.

6. ——: ——: ——: **REMOVAL OF RECEIVER.** An adverse ruling on a motion, the principal purpose of which is to secure the removal of a receiver on the ground that he is a stockholder of the corporation, and therefore not a suitable person to enforce the stockholders' liability provided for in the case of banking institutions, is not an adjudication of the question whether the corporation is a banking institution within the meaning of section 7, article 11*b*, of the constitution; but such ruling will leave the party free to litigate the question of the stockholders' liability in another court of concurrent jurisdiction.

7. **Bank: LIABILITY OF STOCKHOLDERS: AUTHORITY OF RECEIVER.** The liability of stockholders of a banking institution to its creditors, imposed by section 7, article 11*b*, of the constitution, is not an asset of the corporation, collectible by suit or assessment by the officers of the corporation or a receiver acting in their stead, but is a subject-matter wholly distinct from that of the assets of the corporation; and a receiver can proceed to the enforcement of such liability only at the instance of the creditors themselves, and by direction of the court, and then only after the claims of the creditors have been judicially ascertained, and the assets of the corporation exhausted.

8. **Evidence: FINDING.** Evidence examined, and found not to sustain the finding and judgment of the trial court.

APPEAL from the district court for Douglas county. Bill in equity by Hamilton National Bank et al. to enforce the constitutional liability of stockholders against the American Loan & Trust Co. et al. Heard below before FAWCETT, J. Decree for defendants. Plaintiffs appeal. *Reversed.*

*James H. McIntosh (John L. Webster,* of counsel), for appellants.

*William D. McHugh, W. A. Saunders, Carroll S. Montgomery* and *Matthew A. Hall, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court for Douqlas county by the Hamilton National Bank and others, appellants, against the American Loan & Trust Company and others, who were stockholders in the company, for the purpose of enforcing the constitutional liability of the stockholders, alleging said loan and trust company to be a banking corporation or institution. The petition, among other things, alleged that the American Loan & Trust Company was incorporated in December, 1885; that it continued to do business until May 10, 1894, at which time it went into the hands of a receiver, who subsequently collected the assets of the corporation and closed up its business; that appellants are creditors of the company, and that appellees were stockholders, each holding the number of shares set out in the petition, and that they were such stockholders at the time the indebtedness due appellants respectively was contracted; and prayed the appointment of a receiver with an order to him to proceed to enforce the constitutional liability of the stockholders. The answer admits the incorporation as alleged, and that appellants are creditors of the trust company, and at the trial it was further admitted that appellees were stockholders of the American Loan & Trust Company at the time the indebtedness pleaded was contracted; admitted the commencement of the action in the circuit court of the United States, and the appointment of a receiver, and alleged that each of the appellants duly entered an appearance in said proceedings; that said receiver was finally discharged by order of the circuit court. It is further alleged that appellants duly presented to said circuit court an application for an order adjudging the American Loan & Trust Company to be a banking corporation, and that the stockholders of said corporation

were liable as stockholders of a banking corporation under the constitution of the state of Nebraska; that upon said application the circuit court of the United States adjudged that the American Loan & Trust Company was not a banking corporation, and that the stockholders were not liable as stockholders of a banking corporation, and denied the application; and that said proceedings amounted to an adjudication of the rights of appellants, which is binding upon each of them, and that they are estopped from pleading, asserting or maintaining the present action. To this answer, for reply, was filed a general denial. Trial was had on the 22d day of December, 1900, resulting in a finding that the American Loan & Trust Company was not a banking institution, and that the stockholders were not liable, and a judgment dismissing the petition filed by appellants for want of equity. To reverse this judgment, the cause is brought to this court upon appeal.

But two questions requiring determination are presented: First, is the American Loan & Trust Company a banking corporation within the meaning of section 7, article 11b, of the constitution? and, second, are the proceedings had in the circuit court of the United States a bar to the right of appellants to recover in this suit?

The constitutional provision referred to is as follows: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder; and all banking corporations shall publish quarterly statements under oath of their assets and liabilities."

In *State v. Bacon*, 6 Nebr., 286, this court, quoting with approval from Sedgwick, Constitutional Law, said: "In the consideration of these questions it may be observed in the first place, that, in the construction of a constitution the rule is, 'its terms must be taken in the ordinary and

common acceptation, because they are supposed to have been so understood by the framers and by the people who adopted it. This is unquestionably the correct rule of interpretation. It, unlike the acts of our legislature, owes its whole force and authority to its ratification by the people; and they judged it by the meaning apparent on its face according to the general use of the words employed, when they do not appear to have been used in a legal or technical sense.' " This has become the settled rule of interpretation of constitutional provisions. *State v. Lancaster County*, 6 Nebr., 474; *Belknap v. Louisville*, 99 Ky., 474, 487, 34 L. R. A., 256, 59 Am. St. Rep., 478.

The question would, therefore, seem to be, was the American Loan & Trust Company a banking corporation or institution within the meaning of the provision quoted, taking those terms in the ordinary and commonly accepted meaning?

Morse, Banks and Banking [4th ed.], volume 1, section 2, defines a bank as follows: "An institution, usually incorporated, with power to issue its promissory notes intended to circulate as money (known as bank notes); or to receive the money of others on general deposit, to form a joint fund that shall be used by the institution for its own benefit, for one or more of the purposes of making temporary loans and discounts, of dealing in notes, foreign and domestic bills of exchange, coin, bullion, credits, and the remission of money; or with both these powers, and with the privileges, in addition to these basic powers, of receiving special deposits, and making collections for the holders of negotiable paper, if the institution sees fit to engage in such business." As a further definition, he says: "Practically, a bank is a place where deposits are received and paid out on checks, and money is loaned on security. If the institution has the additional power of issuing its promissory notes to circulate as money, it is called a 'bank of issue.' "

Zane, in his work on Banks and Banking (section 2),

says: "A learned and generally accurate judge,[*] attempting a general definition, has defined a banker to be 'one who keeps a place for the traffic of money; who there receives it from others and keeps it with his own, using the whole fund as his own, or remits it at request to other places; who repays it at the will and call of his customers; who furnishes 'money to others on the discount of their obligations, or on securities brought by them; and who buys and sells bills of exchange.' " *People v. Doty*, 80 N. Y., 225.

Bouvier's Dictionary defines a bank as an "institution, generally incorporated, authorized to receive deposits of money, to lend money, and to issue promissory notes,— usually known by the name of bank notes,—or to perform some one or more of these functions."

Black's Law Dictionary defines a bank as "an institution, of great value in the commercial world, empowered to receive deposits of money, to make loans, and to issue its promissory notes (designed to circulate as money, and commonly called 'bank-notes' or 'bank-bills'), or to perform any one or more of these functions."

The Century Dictionary, in defining banks, classifies them under four distinct heads, viz., national and state banks, private banks, loan and trust companies and savings-banks.

In the case of *Bank for Savings v. Collector;* 3 Wall. [U. S.], 495, 512, Justice Clifford, in defining a bank, says: "Banks, in the commercial sense, are of three kinds, to wit: 1, of deposit; 2, of discount; 3, of circulation. All or any two of these functions may be, and frequently are, exercised by the same association; but there are still banks of deposit, without authority to make discounts or issue a circulating medium."

In *Oulton v. Savings Institution*, 17 Wall. [U. S.], 109, 116, it is said: "Associations engaged in moneyed trans-

---

[*] Charles James Folger, 1818-1884, judge court of appeals for ten years; secretary of treasury under Arthur; defeated for governor of New York by Grover Cleveland, 1882, by a majority of 192,854 votes, which fact made Cleveland president.—W. F. B.

actions, whether incorporated or not, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange or promissory notes; or where stock, bonds, bullion, bills of exchange or promissory notes are received for discount or for sale, are regarded as banks."

Articles 3 and 11 of the articles of incorporation of the American Loan & Trust Company are the only ones requiring particular consideration, and are as follows:

"3. The general nature of the business to be transacted shall be as follows: To make and negotiate loans of money upon which it may give its guarantee of payment or collection; to purchase, take and hold real and personal property, whether for its own use or for other purposes, and to sell and convey the same; to purchase and sell notes, mortgages, stocks, bonds and other securities and personal property; to invest money in real estate, to borrow money, and issue its own obligations therefor, to receive money on deposit; to execute trusts."

"11. The indebtedness of this corporation shall at no time exceed two-thirds of its paid capital stock, except for deposits or by the issue of debenture bonds based on security for at least an equal amount placed in the hands of trustees duly appointed by the board of directors."

The articles of incorporation were subsequently amended several times, but in no particular essential to the determination of this case were changes made, except that article 11 was amended to read as follows: "The indebtedness or liability of this corporation shall not exceed two-thirds of its paid-up capital stock, but such limitation shall not include deposits, debenture bonds, based on the security of at least an equal amount of notes or bonds secured by real estate mortgages placed in the hands of trustees duly appointed by the board of directors; or the liability of the corporation by reason of its guaranty of payment of notes or bonds, by it sold; Provided that

the total indebtedness or liability of this corporation, including such deposits, debenture bonds and guaranteed notes and bonds, shall not exceed three times the sum of its paid up capital stock added to the amount of its stockholders' liability."·

From the definitions and authorities quoted it is quite apparent that to buy and sell commercial paper, to make and negotiate loans,—that is, to discount commercial paper, to receive money to be transferred to and paid at other places, to buy and sell exchange upon other cities in this and foreign countries, to receive money on deposit, and to pay the same out upon checks or orders,—are each banking functions; and from an examination of the articles of incorporation and of the evidence in the case, it is equally clear that the American Loan & Trust Company was not only authorized to, but did in fact, exercise many, if not all, of these functions. It accepted money on deposit, and paid the same out upon checks. On June 29, 1889, the day before the present banking law took effect, the loan and trust company attempted to close up that part of its business which consisted in receiving deposits, in which it had theretofore been engaged, and on that day it closed its books, showing the accounts of depositors, at that time numbering 300, and having deposits amounting to many thousands of dollars; and the accounts were transferred to a new set of books kept by a new institution, which had at that time been incorporated under the name of the American Savings Bank, the business of which was carried on in the same offices and largely by the same officers and clerks as the business of the American Loan & Trust Company.

It is contended by counsel for appellees that the receiving of deposits and paying the same out upon checks was business commenced and carried on by one or more of the officers of the American Loan & Trust Company, without the knowledge or consent of the stockholders, and that such transactions were *ultra vires*. We are unable to see merit in this contention. It is probably true that inas-

much as appellants did not contract their indebtedness against the trust company by deposit of money as in a bank, no question of estoppel can enter into or become decisive of this case, and it is probably also true that the question of the liability of the stockholders must be determined from an examination of the articles of incorporation, rather than by the business which was actually transacted. Yet it is unreasonable to suppose that the trust company could have accepted funds on deposit from customers aggregating hundreds in number, and carry on the extensive business which the testimony shows it did, all without the knowledge or consent of the stockholders; and the fact that the trust company did carry on the business of receiving money on deposit and paying it out on checks is a matter meriting consideration in this case, as being an interpretation which the officers themselves placed upon the company's charter powers. It is also established by the evidence that the trust company did an exchange business, having a bank as correspondent in New York, upon which it drew drafts. It also apparently did an extensive business in the matter of buying and selling and discounting paper and securities of other kinds, as well as loaning money on real estate securities. Zane, in his work on Banks and Banking (section 5), speaking of the construction of charters, says: "But it is well known that many corporations called trust companies have banking powers, and carry on a general banking business thereunder. Such corporations from any standpoint would necessarily be considered simply as banks, so far as their character as banks was in question." A plain distinction is observed in the statute concerning the liability of stockholders in banks and banking institutions and other corporations. Section 128, chapter 16, Compiled Statutes, 1885, which was in force at the date of the incorporation of the American Loan & Trust Company, is as follows: "The articles of incorporation must fix the highest amount of indebtedness or liability to which the corporation shall, at any one time, be subject, which

must in no case, except in that of risks of insurance companies, and deposits in banks, exceed two-thirds of its capital stock." By the terms of this section it was obligatory upon every corporation to set out in its articles the amount of indebtedness which it was authorized to contract. This, in all corporations, except banks and banking institutions and insurance companies, was limited to two-thirds of its capital stock, the legislature no doubt having in mind the constitutional provision which we have quoted, which made the stockholders liable to the creditors of the bank, over and above the stock by them held, to an amount equal to their respective shares; while by section 4, article 11, of the constitution, stockholders in other classes of corporations are only made liable to creditors of the corporation to the extent of the amount remaining due and unpaid on their subscriptions to stock. It will be noticed that appellee, the trust company, in article 11 of its articles of incorporation, which we have set out, expressly excepts deposits from the limitations upon its indebtedness, and thus classes itself among banking corporations or institutions. Its last amended articles contain a provision in the language following: "Provided that the total indebtedness or liability of this corporation, including such deposits, debenture bonds, and guaranteed notes and bonds, shall not exceed three times the sum of its paid-up stock added to the amount of its stockholders' liability." Inasmuch as the articles provided that the stock must be fully paid before being issued, it is difficult to see the purpose of the latter clause of the portion just quoted, viz., "added to the amount of its stockholders' liability," unless the framers of the articles of appellee knew and understood that the stockholders were liable under the constitution as stockholders of a banking institution. In any other view, the clause quoted would be meaningless.

This was a right under the constitution which must have been of great value to appellee. The nature of its business was such that to restrict its indebtedness to two-

thirds of the amount of its capital stock might have and no doubt would have very seriously hampered it in the business which it was undertaking to transact. For all that appears from the record, at the time the indebtedness of appellants was contracted it may have been indebted to an amount exceeding the two-thirds of its capital stock, to which it would have been limited had it not been a banking institution.

In *State v. Minnesota Thresher Mfg. Co.*,* 40 Minn., 213, 222, it is said: "To determine its actual character, we must look to the objects of its formation, and the nature of its business, as stated in the articles themselves. It can not be made one kind of corporation merely by labelling it such, if its declared objects and purposes show it to be something else." So regarding appellee, notwithstanding the fact that it was named a trust company instead of a banking institution, as long as it had and exercised banking powers, and claimed for itself under the statute banking privileges, it is a bank, by whatever name it may be called. The articles of incorporation are in the nature of a contract between the corporation and the state, and the courts will generally follow the same rules of construction as against the corporation and its stockholders that obtain in the construction of other contracts. *Hartford Bridge Co. v. Union Ferry Co.*, 29 Conn., 210; *State v. Noyes*, 47 Me., 189; *Home of The Friendless v. Rouse*,† 75 U. S., 430. In the case of ordinary contracts between private individuals, the rule is generally stated to be that where the parties thereto unite in placing a reasonable construction upon a doubtful provision therein, such construction will ordinarily be adopted. *School District v. Estes*, 13 Nebr., 52; *Paxton v. Smith*, 41 Nebr., 56, 59; *Hale v. Sheehan*, 52 Nebr., 184. The language of a public grant is regarded as the language of the party obtaining it, and in the case of all contracts, the general rule is that its language shall be construed most strongly against the party using it (*Hartford Bridge Co. v. Union*

---

* 3 L. R. A., 510, 517.    † 19 L. Ed., 495.

*Ferry Co., supra*) ; and we can conceive of no principle that would be violated by adopting the construction of the charter powers of appellee which its officers themselves placed thereon. We conclude, therefore, that the American Loan & Trust Company is a banking institution within the ordinary meaning of that term as used in section 7, article 11*b*, of the constitution, *supra,* and that the liability of the stockholders is that of the stockholders of a banking institution.

The next question requiring determination is whether or not the proceedings had in the federal court are a bar to the right of appellants to maintain this suit. On the 30th day of September, 1897, the Rutland County National Bank, one of the appellants herein, filed in the circuit court of the United States a motion in the language following: "Now comes the Rutland County National Bank, and moves the court for leave to file a petition for the removal of Philip Potter as receiver of the American Loan & Trust Company, and for the appointment of a substituted receiver, and for such other purposes on the several grounds stated in said petition which is tendered herewith." Attached to said motion was a petition presented by the Rutland County National Bank, setting up that Philip Potter, the receiver, was a stockholder in the American Loan & Trust Company, and that petitioner was advised by its counsel that the stockholders of said corpo ration were liable under the constitution of this state, in an amount equaling the par value of the stock held by them, and that Philip Potter, for the reason that he was a stockholder, was not a fit person to enforce such liability, and praying the removal of said receiver, and the appointment in his stead of another suitable and disinterested person, who should, after his appointment and qualification, under the directions of the court, proceed to enforce against the stockholders of the trust company their liability under the constitution for the payment of the claim against said corporation. This motion was overruled by the circuit court, and the application to file the petition tendered

was denied. It is claimed by counsel for appellees that this action on the part of the circuit court amounts to an adjudication of the question whether or not the American Loan & Trust Company was a banking corporation or institution, and that such proceedings constitute a bar to the right of appellants to proceed in this action. It is disclosed by the record that at the time of the filing of this motion none of the appellants had presented or proved in the circuit court their claims against the trust company; they had not been made parties to the suit in the circuit court, and aside from recognizing the proceedings by taking receiver's certificates for the amount of their claims, had made no appearance in the cause, except that it appears from the record that the Rutland County National Bank had filed objections to the report made by the receiver of a sale which he had made, under directions of the court, of certain assets and property of the corporation. It is claimed by appellees that appellants were in reality parties to the motion filed in federal court, in that it was for the benefit of all the creditors, and for that reason is a bar to this proceeding. Again, it is contended that the proceedings in the federal court are a bar to this proceeding whether appellants ever appeared therein or not, for the reason that the federal court had jurisdiction of the corporation and of its property, and appellants might, if so disposed, have appeared in the cause in the federal court, and by proper pleadings obtained an adjudication of the question concerning the liability of the stockholders. Regarding the first-named contention, it may be said that the motion quoted seems to have presented the single question of removing the receiver and appointing another who should not be a stockholder in the corporation. It is true that the petition tendered foreshadowed the desire to have proceedings to enforce the liability of the stockholders instituted in a proper manner by a substituted receiver, but it can not be successfully contended that the question of the liability of the stockholders was presented by this motion to the court for consideration.

The exact amount due from the corporation to its various and numerous creditors seems not to have been judicially determined at that time. Appellants had not, at that time, either proved their claims before the receiver, or obtained judgment thereon, and were not in a position to ask the enforcement of the stockholders' liability. *Farmers' Loan & Trust Co. v. Funk,* 49 Nebr., 353; *German Nat. Bank v. Farmers & Merchants' Bank,* 54 Nebr., 593; *Hastings v. Barnd,* 55 Nebr., 93. The question upon which the ruling of the court was invoked was whether the showing of the Rutland County National Bank was such as to call for the discharge of the then acting receiver, and the appointment of one who should be in no way disqualified, by reason of adverse interest, to enforce the stockholders' liability. The question of the stockholders' liability was one which might or might not arise at some future time, but at all events certainly would not arise until a proper proceeding had been instituted by the receiver or by the creditors themselves.

It is next contended that appellants had the right to intervene in the circuit court and present for determination there the question of the stockholders' liability, and that having failed so to do, they are now estopped to present the matter in this proceeding. Many authorities are presented on behalf of appellees, which seem in a measure to support their contention, but we are not prepared to carry the rule to the extent sought by counsel. The receiver appointed by the circuit court for the trust company was authorized and directed to collect and convert into money the assets of the corporation. He took the place of the regularly constituted officers of the corporation and had the same right to proceed against any of the stockholders that the officers of the corporation had. He could have proceeded against any of the stockholders for the collection of any balance remaining due from them to the corporation on subscriptions for stock, and could have collected any assessments legally made against stockholders. In short, it was his duty, under directions of the court, to

convert all the assets of the corporation into such form as would enable them to be used for the satisfaction of the debts existing against the corporation. The liability of the stockholders created by the constitution was not one existing in favor of the corporation, but in favor of the creditors of the corporation. Concerning this liability, Morawetz, in his work on Private Corporations, volume 2, section 869, says: "A provision of this character does not increase the capital or pecuniary resources of a corporation, except indirectly, by increasing its commercial credit; its object is merely to provide a security for creditors in addition to the security furnished by the company's capital. The liability thus assumed by the shareholders is solely for the benefit of the company's creditors. The corporation and its officers and agents can not dispose of or control it in any manner. They can not collect it by an assessment upon the shareholders; nor can they assign it to a trustee for the benefit of creditors, though the corporation be insolvent." 3 Thompson, Corporations, sec. 3560; 1 Cook, Corporations [5th ed.], sec. 218.

In *Runner v. Dwiggins,*[*] 147 Ind., 238, 239, Chief Justice Jordan, in speaking of stockholders' liability, says: "Certainly, it can not be asserted with any reasonable support, that this peculiar liability imposed by the statute upon those who become shareholders of a banking association organized under the existing law, is in any sense an asset, right or interest of the bank which it, as an insolvent debtor, can by its deed of assignment pass to its assignee, or in any manner vest the enforcement thereof in him. In the absence of some statutory provision conferring the right, neither the corporation nor its assignee, nor receiver can enforce such a liability as that in question." *Zang v. Wyant,*[†] 25 Colo., 551; *Umsted v. Buskirk,* 17 Ohio St., 113; *Wright v. McCormack,* 17 Ohio St., 86; *Liberty Female College v. Watkins,* 70 Mo., 13; *Dutcher v. Bank,* 12 Blatch. [U. S. C. C.], 435; *Farnsworth v. Wood,* 91 N.

[*]36 L. R. A., 645.                    [†]71 Am. St. Rep., 145.

12

Y., 308; *Parker v. Savings Bank*,* 53 S. Car., 583. So far as appears from the record in this case, this liability was a subject-matter over which the receiver had no jurisdiction. It was a liability which might have been invoked by the creditors of the corporation after the amount due them was judicially ascertained and the assets of the corporation exhausted. It is true that a proceeding to enforce this liability might very properly be instituted by a receiver appointed by the court for that purpose, or, as has been said by this court in *Farmers' Loan & Trust Co. v. Funk*, 49 Nebr., 353, such proceedings might be instituted by a receiver appointed to collect the assets of the corporation, by direction of the court after the assets had been collected and applied on the indebtedness, and the remaining debts judicially ascertained. And it is doubtless true that the receiver appointed by the circuit court for the trust company could, under directions of the court, after the debts against the corporation had been judicially ascertained and its property exhausted, have proceeded to enforce such liability.

As we have seen, such liability is a subject-matter separate and distinct from that over or concerning which the receiver had been appointed. While the circuit court had jurisdiction in the case to proceed with the enforcement of the stockholders' liability, such jurisdiction was never invoked or exercised; jurisdiction having only been exercised over and concerning the assets and liabilities of the corporation. It follows that in order to constitute a bar to this proceeding, it was necessary for appellees to plead and prove that the precise question involved—that is, the liability of stockholders to creditors in an amount equaling the stock owned by each respectively—was raised and determined in the former suit. This they have failed to do. In *Slater v. Skirving*,† 51 Nebr., 108, this court said: "There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its

---

* 69 Am. St. Rep., 888.        † 66 Am. St. Rep., 444.

effect as an estoppel in another action upon a different claim or cause of action. In the former case a judgment on the merits constitutes an absolute bar to a subsequent action, not only as to every matter offered and received to sustain or defeat the claim, but as to any other admissible matter which might have been offered for that purpose. But where the second action is upon a different claim or demand, a judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the finding or verdict was rendered." *Wilch v. Phelps,* 16 Nebr., 515.

Again, in *Anderson v. Kreidler,* 56 Nebr., 171, it is said: "To sustain a plea of prior adjudication, the matter in question must be shown to have been of the issues joined and tried in the former action."

In the case of *Richardson v. Opelt,* 60 Nebr., 180, the question was very carefully considered, and in that case Justice HOLCOMB, writing the opinion, said: "When the pendency of a prior suit is pleaded in abatement, the case must be the same, or it will not be sustained. There must be the same parties or such as represent the same interest; the same rights must be asserted and the same relief prayed for. This relief must be founded on the same facts, and the essential basis of the relief must be the same in both actions. As a general rule, where a judgment in a prior suit would be a bar to a judgment in the second suit brought in the same or another court of concurrent jurisdiction, the plea of other suit pending will be held good."

While, as we have seen, appellants might, by a proper proceeding, have invoked the judgment of the circuit court upon the question of the liability of the stockholders, they were not obliged to do so, but might institute such proceeding in any other court of concurrent jurisdiction. For reasons which they doubtless deemed sufficient, appellants saw fit to institute this proceeding in the state court. It is very clear that the question of the liability of appellees as stockholders in the American Loan & Trust

Company was neither presented nor adjudicated in the proceedings had in the federal court, and it follows that the contention of appellees in this regard can not be sustained.

The judgment of the trial court that the American Loan & Trust Company is not a banking corporation or institution, and that appellees are not liable as stockholders, is wrong and must be reversed. We have been asked to enter judgment against appellees in this court. This, in view of the great number of stockholders, and the diversity in amount of their liabilities, we are not prepared to do. It is therefore recommended that the judgment of the trial court be reversed, and the cause remanded to the district court for further proceedings in accordance with law.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.