### SIOUX CITY, O. & W. RY. CO. v. MANHATTAN TRUST CO.

#### SIOUX CITY, O. & W. RY. CO. et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1899.)

#### Nos. 505 and 661.

1. RAILROADS—SUIT TO FORECLOSE MORTGAGE—ISSUES.

   In a suit by a trustee to foreclose a railroad mortgage, the question of the ownership of the bonds secured properly comes up for consideration on distribution of the proceeds of the sale, and not before; and allegations in the answer of the mortgagor seeking to raise such question are properly stricken out by the court.

2. SAME—VALIDITY OF ISSUE OF STOCK AND BONDS—NEBRASKA CONSTITUTION.

   Stock and bonds of a railroad company, issued in exchange for the stock and bonds of a former company, not shown to have been invalid, in pursuance of a reorganization scheme, which, so far as appears, was entered into in good faith by the issuing company, are not invalid, under Const. Neb. art. 11, § 5 (Consol. St. Neb. 1891, p. 72), which provides that a railroad company shall not issue stock or bonds except for money, labor, or property actually received, and that fictitious issues of stock or bonds shall be void, because at the time of the exchange the cash value of the physical property and franchises acquired by the reorganized company was not equal to the par value of its securities.

Appeals from the Circuit Court of the United States for the District of Nebraska.

On October 30, 1893, the Manhattan Trust Company, the appellee, as trustee in a deed of trust or mortgage executed by the Sioux City, O'Neill & Western Railway Company, one of the appellants, exhibited its bill of complaint in the circuit court of the United States for the district of Nebraska, against the mortgagor, for the purpose of foreclosing said mortgage. The mortgage sought to be foreclosed covered the railroad of the Sioux City, O'Neill &

Western Railway Company in the state of Nebraska, from Covington, in that state, to a point one mile west of O'Neill, Neb., a distance of about 130 miles, and also certain shares of stock in the Pacific Short-Line Bridge Company, which the mortgagor professed to own, and was given to secure the payment of the mortgage bonds of the defendant company to the amount of $18,000 per mile on the line of road last aforesaid, or, in the aggregate, to secure mortgage bonds to the amount of $2,340,000. A receiver of the mortgaged property was appointed on the day said complaint was filed, and on December 29, 1893, the defendant company filed its answer. At a later date, February 28, 1894, the defendant also filed a cross bill, in which it sought to make the firm of J. Kennedy Tod & Co., of the city of New York, a party to the foreclosure suit, both in its own right, and as trustee for certain other persons whom it was supposed to represent. At a later date, to wit, May 12, 1894, E. H. Hubbard, as assignee of the Union Loan & Trust Company, an insolvent Iowa corporation, which had previously done business at Sioux City, Iowa, asked leave to intervene in the foreclosure suit for the protection of his interest, as assignee, but such leave was denied by the trial court without prejudice. The answer and cross bill thus filed, which were very lengthy, contained, in substance, the same allegations. For present purposes it will suffice to say that by its answer and cross bill the defendant company sought to show the following facts: That, prior to the organization of the Sioux City, O'Neill & Western Railway Company, there had been a corporation called the Nebraska & Western Railway Company, which had constructed the line of road now in controversy, and had issued mortgage bonds to the amount of $2,583,000, which bonds were held by the Union Loan & Trust Company of Sioux City, Iowa, as collateral security for the payment of certain notes which the trust company had itself indorsed and sold to investors in various parts of the United States; that the Sioux City, O'Neill & Western Railway Company was the successor of the Nebraska & Western Railway Company, and had come into existence in pursuance of a scheme to reorganize the latter company after it had become involved in debt; that in the course of such reorganization, and to effectuate that object, the new company had issued its bonds to the amount of $2,340,000, being the bonds now in controversy, in exchange for the bonds of the old company, and that, when so issued, they took the place of the old securities, and were in equity subject to the same pledge; that, prior to said reorganization, one A. S. Garretson, who was connected with the Union Loan & Trust Company, and was also engaged with some other parties in various railroad enterprises in and about Sioux City, had wrongfully withdrawn the old securities of the Nebraska & Western Railway Company from the possession of the last-named trust company, and had hypothecated them with J. Kennedy Tod & Co., of New York, as security for a loan of $1,000,000, subsequently increased to $1,500,000, which loan was made to said Garretson to assist him in the various enterprises in which he and his associates were engaged; that, when the reorganization took place, the new securities, being the bonds in suit, had passed into the possession of J. Kennedy Tod & Co., in exchange for the old securities; and that the last-named firm had received both the old and the new securities under circumstances that were set out at great length in the pleadings, which affected that firm with knowledge of the prior rights of the various note holders for whose benefit, as it was claimed, the old securities had originally been deposited with the Union Loan & Trust Company. Both the answer and the cross bill pleaded further facts which were intended to show that the new securities issued by the Sioux City, O'Neill & Western Railway Company were void, under the provisions of section 5 of article 11 of the constitution of the state of Nebraska (Consol. St. Neb. 1891, p. 72), which reads as follows: "No railroad corporation shall issue any stock or bonds, except for money, labor, or property actually received and applied to the purposes for which such corporation was created, and all stock, dividends, and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void. * * *"

Exceptions were filed to the aforesaid portions of the answer which we have stated, in substance. A demurrer was also interposed to the cross bill, and, on the hearing of the exceptions to the answer and the demurrer to the

cross bill, both were sustained, whereupon the objectionable allegations were expunged from the answer, and the cross bill was dismissed. From the order denying E. H. Hubbard, assignee, leave to intervene in the foreclosure suit, and from the last-mentioned orders expunging a part of the answer, and dismissing the cross bill, all of which were made on May 12, 1894, the first of these appeals appears to have been taken, being case No. 505. A decree of foreclosure was entered on December 7, 1894, from which decree the second appeal was taken, the same being case No. 661. Both of these appeals were before this court at a former term, and were heard in connection with the case of Hubbard v. Tod, which latter case came on appeal to this court from the circuit court of the United States for the Northern district of Iowa, and involved the question which was sought to be raised in the case now in hand,—whether Hubbard, assignee of the Union Loan & Trust Company, or J. Kennedy Tod & Co., had the superior lien on the mortgage bonds of the Sioux City, O'Neill & Western Railway Company. On the former occasion, when the appeals were heard, the decree below was in all things affirmed, but the order of affirmance was subsequently set aside, for reasons which are fully stated in 40 U. S. App. 154, 22 C. C. A. 606, and 76 Fed. 905. The Iowa case above mentioned eventually went to the supreme court of the United States on a writ of certiorari, and was recently decided by that court adversely to the claim of the assignee, the decree of the circuit court, which was affirmed by this court, being also affirmed by the supreme court. 171 U. S. 474, 19 Sup. Ct. 14. Since the last affirmance by the supreme court of the decree in the Iowa case, a motion has been made in the case at bar for an affirmance of the decree of foreclosure, which motion is based on the ground that, by proceedings duly taken in the circuit court of the United States for the Northern district of Iowa since the mandate of the supreme court was there filed, E. H. Hubbard, assignee of the Union Loan & Trust Company, has been forever barred and foreclosed of all of his rights in or to the bonds of the defendant company which are involved in the present foreclosure proceedings. The case has been again heard upon its merits, as well as upon the aforesaid motion.

John C. Coombs and Henry J. Taylor (Charles H. Hanson, on the brief), for appellants.

John L. Webster (George W. Wickersham, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is manifest, we think, that the appeals which were taken in this case are without merit, in so far as they are predicated upon the action of the lower court in refusing to permit E. H. Hubbard, assignee of the Union Loan & Trust Company, to intervene in the case, and in so far as they are predicated upon the action of the lower court in striking out those allegations of the defendant's answer which attempted to show that the assignee above named had a better title to the bonds in controversy than J. Kennedy Tod & Co., who claimed to own them. The facts alleged in the motion for affirmance which has recently been filed in this court by the appellee are not disputed, and must be taken as conceded. From this source it appears that the assignee of the trust company has not exercised his right to redeem the bonds in controversy from the superior lien of J. Kennedy Tod & Co. by the payment of $1,500,000 and interest, which right of redemption was secured to him by the decree rendered in the Iowa case (Manhattan Trust Co. v. Sioux City & N. R. Co., 65

Fed. 559–568), which decree was recently affirmed by the supreme court of the United States (171 U. S. 474, 19 Sup. Ct. 14); that, under the provisions of said decree, the assignee is at the present time barred of all interest in the bonds; and that the controversy heretofore existing between him and J. Kennedy Tod & Co. as to their respective rights to the bonds has been settled finally in a suit between them, where that was the sole question at issue. It results from these facts that the action of the lower court in refusing to permit the assignee to intervene in the case at bar is now immaterial. Such leave was sought by the assignee for no other purpose than to inject into the foreclosure suit, to which the firm of J. Kennedy Tod & Co. was not a party, the same controversy between the assignee and the last-mentioned firm concerning the ownership of the bonds which was then pending in the Iowa case, and has since been determined adversely to the claim of the assignee. Besides, the order refusing the assignee leave to intervene was not a final order, from which an appeal would lie, as this court has recently decided. Credits Commutation Co. v. U. S., 91 Fed. 570. It is equally clear that, by reason of the adjudication in the Iowa case, the defendant company cannot be heard at the present time to complain because the trial court expunged those parts of the defendant company's answer in which it attempted to inject into the foreclosure suit the pending controversy between the assignee of the Union Loan & Trust Company and J. Kennedy Tod & Co., concerning the ownership of the bonds. That issue having been determined as between the parties who are primarily interested in its determination, it cannot be relitigated in the case at bar by the defendant company.

Moreover, we are of opinion that the lower court properly expunged that part of the defendant's answer, and that its order to that effect was a proper one when the same was made. The issue sought to be raised by the defendant company concerning the ownership of the bonds was one which, in the orderly progress of the cause, would necessarily have been tried and determined as between the rival claimants of the bonds, when the trustee in the mortgage was called upon to distribute the proceeds of the foreclosure sale, and it was wholly unnecessary to consider it until that time had arrived. For this reason, therefore, the lower court properly rejected the proposed issue at the time it was tendered by the answer, as well as for the reason that the same issue was being tried in a proceeding between the proper parties in another jurisdiction.

This leaves for consideration the single question whether the lower court erred in expunging that part of the defendant's answer in which it sought to show that the bonds in controversy were void under section 5, art. 11, of the Nebraska constitution, quoted above in the statement; and there was no error in this regard, unless the answer was clearly sufficient to establish such invalidity. It is a notable fact that, on the first submission of the case to this court, little or no attention was paid to the constitutional question, either in the brief or on the oral argument of appellant's counsel; but, on the last hearing, it was given great prominence, and becomes the question of chief importance.

The material allegations contained in the defendant's answer which tend to establish the invalidity of the bonds are, in substance, these: That the railroad of the defendant company was formerly the property of the Nebraska & Western Railway Company, and cost to construct and equip, in the year 1890, a sum not to exceed $2,000,000, as the defendants are advised and believe; that two persons, George W. Wickersham and A. S. Garretson, who bought the property of the Nebraska & Western Railway Company at a foreclosure sale, as trustees for the benefit of its bondholders, caused the defendant company, the Sioux City, O'Neill & Western Railway Company, to be formed, with a capital stock of $3,600,000, and a bonded indebtedness of $2,340,000, for the presumed purpose (because the defendant has been so advised) of evading the constitutional provision of the state of Nebraska above quoted; that the par value of the stock and bonds issued by the defendant company, to wit, $5,940,000, as defendant is advised and believes, is three times the actual cost or intrinsic value of its property; that no substantial part of either said stock or bonds was ever paid in cash to the defendant company, or applied to the construction or equipment of said property; and that all of the stock, save a few shares, came to the hands of A. S. Garretson, and was deposited with the Union Loan & Trust Company of Sioux City, Iowa. On the other hand, the defendant's answer and the exhibits thereto show that the Nebraska & Western Railway Company was a corporation which had a capital stock of $2,500,000, and an outstanding mortgage indebtedness somewhat in excess of that sum; that it was organized with a view of constructing a through line of railroad from Sioux City, Iowa, to a junction with the Central Pacific Railroad at Ogden, Utah, to be termed the Pacific Short Line; and that the road from Sioux City, Iowa, to O'Neill, Neb., formed one of the divisions of the proposed road. There is no allegation in the answer that either the outstanding stock or bonds of the old company, the Nebraska & Western Railway Company, had not been paid for in full, or that the same were, for any reason, either void or voidable. The answer further shows that the bonds and stock of the new company, the Sioux City, O'Neill & Western Railway Company, in the reorganization scheme, took the place of the stock and bonds of the old company, the bonds going to J. Kennedy Tod & Co. in exchange for the old bonds, and the stock to the Union Loan & Trust Company of Sioux City, Iowa. No allegation is found in the answer which shows who the officers and directors of the new company were at the date of the reorganization, and no allegations are found which will serve to impeach the good faith of such officers and directors in issuing its securities at the time of the reorganization, since their names and functions are not disclosed. There is an allegation, as heretofore stated, which tends to impeach the good faith of Wickersham and Garretson, who purchased the property and franchises of the old company at the foreclosure sale; but as they were the vendors of the property which was acquired by the new corporation, and were entitled to dispose of the property to the best advantage, and as it is not alleged that they were either officers or directors of the new company when it issued its stock and executed its bonds, it is not

apparent that their motives could have had any effect upon the validity of the transaction.

In view of the premises, we are of the opinion that the answer of the defendant company was insufficient to establish the invalidity of its mortgage indebtedness, and that no error was committed in expunging that part of its answer in which it undertook to plead such a defense.   The case does not differ in any of its essential features from a case decided by the supreme court (Railroad Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482), in which case it was said, in substance, that such a provision as is found in the Nebraska constitution is not necessarily indicative of a purpose to make the validity of every issue of stock or bonds by a corporation depend upon the inquiry whether the property received therefor was of equal value in the market with the stock or bonds, and in which it was further held that such provisions are not designed to prevent corporations from exchanging their stock or bonds for money, property, or labor, upon such terms as they think proper, provided the transaction is a real one, based upon a present consideration which is deemed adequate, and is entered into for a legitimate corporate purpose, and is not a mere device to evade the law, and accomplish what is forbidden.   In that case, as in the one at bar, the owners of a certain railroad who had bought the same at a foreclosure sale, in trust for mortgage bondholders, conveyed it to a new company that had been formed in pursuance of a plan of reorganization, and received in exchange all the stock of the new company as full paid, and also mortgage bonds of the new company to the amount of $2,600,000, which were distributed among the holders of the bonds of the old company, and were taken by them in exchange for the old securities.   The transaction in question took place in Arkansas, under a provision of the constitution of that state (section 8, art. 12), which provided that "no private corporation shall issue stock or bonds, except for money or property actually received or labor done; and all fictitious increase of stock or indebtedness shall be void."   It also appeared in that case, from admissions contained in the pleadings, that the property which had been acquired by the new company did not exceed the par value of its stock.   The transaction was sustained notwithstanding these facts, the court saying, in substance, that it did not fall within the prohibition of the constitution; that the owners of the property and franchises, when they conveyed the same to the reorganized company, had the right to fix the terms upon which they would so convey it; that all that was done was to form a new company in lieu of the old, with substantially the same amount of stock and bonds which the old company had lawfully issued; and that, in so far as the pleadings disclosed, there had been no fictitious increase or issue of either stock or bonds, within the true intent and meaning of the constitution.   See, also, Continental Trust Co. v. Toledo, St. L. & K. C. R. Co., 82 Fed. 642–656.   These observations in Railroad Co. v. Dow are strictly applicable to the case in hand, and should be decisive of the present controversy, in view of what has already been said concerning the averments contained in the defendant's answer, and the conditions which appear to have existed when the reorgani-

92 F.—28

zation took place. It is contended, however, that a different construction than the one above indicated has been placed on section 5 of article 11 of the Nebraska constitution by the courts of that state, and that, according to the local view of the purpose and effect of the constitutional inhibition, the securities which are now in question are null and void. The case upon which this contention appears to be wholly founded (State v. Atchison & N. R. Co., 24 Neb. 143, 38 N. W. 43) was one in which the state sought to forfeit the charter of the railroad company by a writ of quo warranto for acts of misuser and nonuser. The acts which were complained of by the state consisted in becoming consolidated with a competing railroad, in violation of the constitution of the state, and in executing a lease whereby the defendant road had abandoned the exercise of its public duties and franchises. No complaint appears to have been made in that case of an excessive issue of bonds or stock; and, in view of the issues that were raised by the pleadings, nothing was said in the case cited which can be regarded as authoritative upon the point involved in the present controversy. In the case at bar we are dealing with the question whether stock and bonds which were issued in exchange for other stock and bonds not shown to have been invalid, and in pursuance of a reorganization scheme which, for aught that appears, was entered into in perfect good faith by the issuing company, should be adjudged invalid because at the time of the exchange the cash value of the physical property and franchises which were acquired by the reorganized company was not fully equal to the par value of its securities. This question, we think, should be answered in the negative, for reasons already stated, since we find nothing in the local decisions to which our attention has been directed which serves to alter that conclusion.

It results from what has been said that the orders and the decree from which the appeals were taken should be affirmed, and it is so ordered; but inasmuch as counsel for the appellee has suggested in this court that it is considered desirable to make some changes in the provision of the final decree relative to the appointment of appraisers, to make the decree more nearly comply with the requirements of the local law regulating judicial sales in the state of Nebraska, the order of affirmance will be accompanied with leave to the circuit court to modify or amend its decree in the respect last stated in such manner as it may deem necessary or advisable.