STATE, EX REL. FRANK M. TYRRELL, COUNTY ATTORNEY, APPELLANT, V. LINCOLN TRACTION COMPANY, APPELLEE.

FILED JANUARY 3, 1912.   No. 17,232.

1. Quo Warranto: CORPORATIONS: USURPATION OF POWERS: ADMISSIONS: PARTIES. "An information in the nature of a *quo warranto* filed against a corporation by its corporate name admits the existence of the corporation. If the charge be that the corporation is exercising powers not given by its charter, the action proceeds against the corporation to oust it from the use of the usurped power; but, where it is claimed that corporate powers are being usurped by a body which has no corporate existence, then the action must be against the individuals who are usurping corporate rights." *State v. Lincoln Street R. Co.*, 80 Neb. 333.

2. Street Railways: CONSOLIDATION: CONSTITUTIONAL PROVISION. Section 3, art. XI of the constitution, which prohibits the consolidation of the stock, property, franchises or earnings in whole or in part of railroad corporations and telegraph companies owning parallel or competing lines, does not apply to street railway corporations not engaged in general railroad or telegraph business.

3. ———: ISSUANCE OF STOCK: CONSTITUTIONAL PROVISION. Section 5, art. XI of the constitution, which forbids a railroad corporation issuing any stocks or bonds except for money, labor or property actually received and applied to the purposes for which such corporation was created, does not apply to street railway corporations not engaged in general railroad business.

4. ———: CONSOLIDATION: DISSOLUTION: EVIDENCE. The mere fact that the directors of two street railway corporations, which are consolidated by virtue of the provisions of sections 6-12, art. VII, ch. 72, Comp. St. 1907, agreed to an exchange of the stocks and bonds and the assets of the constituent corporations for the consolidated corporation's stocks and bonds, the aggregate par value whereof greatly exceeds the value of the tangible assets of the constituent corporations, is not in itself such proof of fraud as will justify a dissolution of the consolidated corporation.

5. ———: VALUATION; EARNINGS: FARES. The valuation thus placed on the assets of the constituent corporations will not bind the railway commission in estimating the valuation upon which the corporation should earn an income, or in fixing the price the carrier may charge for transporting passengers.

6. ———: POWER OF COURTS: CANCELATION OF STOCK. A franchise to be and to do as a public service corporation is held in trust for the public, as well as for the profit of the stockholders, and it is competent for a court of general jurisdiction, having jurisdiction of the subject matter and of the parties in interest, to cancel bonds and stocks issued without consideration by such a corporation, where, to permit them to gain currency, will seriously impair its ability to discharge its duty to the public.

7. ———: CONSOLIDATION: INCREASE OF STOCK: CANCELATION. But if, in a consolidation of constituent street railway companies which theretofore satisfactorily served the public, all of their tangible property is conveyed to the consolidated corporation and subsequently improved, the mere fact that the stock and bond issues of the constituent corporations were doubled by the consolidated corporation, without greatly adding to the tangible assets, will not justify a cancelation of that stock.

8. ———: ———: CANCELATION OF STOCK. And if to cancel one class of that stock will take from part of the stockholders the consideration for their agreement to consolidate the constituent corporations and will not interfere with the consideration received by other stockholders, none of the stock should be canceled if the consolidation be permitted to continue.

9. Quo Warranto: DEFENSES. In proceedings in *quo warranto* prosecuted by the county attorney or the attorney general, the respondent should either disclaim or justify exercising the challenged franchise, and, in the latter event, should plead the precise authority for his or its conduct.

10. ———: PLEA OF JUSTIFICATION: BURDEN OF PROOF. And if the plea of justification is traversed by the reply, the burden is upon the respondent to establish his right.

11. ———: JUDGMENT AS BAR: CAUSES OF ACTION. A judgment responding to the sole issues, confirming the respondent's right to be and to exercise the franchises of operating a street railway, is no bar to subsequent *quo warranto* proceedings challenging the respondent's right to exercise the franchise of manufacturing, selling and distributing electric current for illumination and power purposes, or operating a heating plant in the same city, nor did the state split its cause of action by failing to include

in its first information a complaint with relation to the exercise of the last described franchise.

12. **Judgment on Appeal.** The respondent having failed to sustain the burden of proof cast upon it by the issues joined and the law, and the charges in the information being severable, the judgment will be affirmed as to those issues which the evidence discloses were properly determined, and reversed as to those upon which there is a failure of proof.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed in part and reversed in part.*

*J. B. Strode* and *F. M. Tyrrell,* for appellant.

*Charles S. Allen* and *Hainer & Smith, contra.*

ROOT, J.

This is an appeal by the state from a judgment in the respondent's favor on the issues joined in *quo warranto* proceedings.

In January, 1909, the Lincoln Traction Company and the Citizens' Railway Company, corporations, were separately operating lines of street railway in the city of Lincoln. The traction company also controlled a heat, light and power plant within that city. At this time the Citizens' Railway Company had outstanding $415,000 capital stock, which the railway commission subsequently found represented the investment of money and services of the reasonable value of $399,000. This corporation was organized about 1905, and there is uncontradicted evidence tending to prove that the increase in the market value of materials used in the construction of that railway at least equalled the depreciation thereof by use intermediate the organization of this corporation and February, 1909.

The traction company in January, 1909, had outstanding $700,000 of common stock, $189,000 of bonds, and a floating debt of $61,000, or gross liabilities of $1,280,000.

The amount of money invested by this corporation and its predecessors in interest in the properties of this corporation cannot be so definitely ascertained, because the traction company in 1909 was the successor in interest of several street railway companies that some 20 years previously constructed and subsequently operated distinct railway systems in that city. By an inevitable process of evolution, the original equipment of those railways was discarded, the ways improved, and the motor power changed from horse to electricity. In September, 1907, the railway commission found that the original cost of the properties of the traction company was $1,660,000, and that $606,000 had been expended in additions and improvements. We are not advised by the record whether any part of this $2,266,000 represents money expended for such ordinary maintenance as should be charged to operating expenses. If so, to that extent the expenditure would be no more of an investment than the money paid for wages or taxes. It seems, however, that the railway commission found that at the time of the hearing the total replacement value of the street railway was $1,100,000, and that the company's expert fixed that valuation at $1,151,672. As we understand the record, the traction company also had invested about $350,000 in subsidiary heat, light and power organizations. While the evidence is not definite, we are of the opinion that the heating plant was constructed and is ostensibly operated by a separate corporation. Whether the light and power industry is owned by a distinct corporation, separate from the street railway company, we are not definitely advised by the proof, but our impression is that the respondent assumes ownership of and the right to enjoy those franchises without the intervention of any other corporation or other person. The traction company was then earning net upon all of its properties $116,000 per annum.

February 1, 1909, the directors of these corporations, assuming to act under the provisions of section 6 *et seq.*,

art. VII, ch. 72, Comp. St. 1907, entered into a contract of consolidation, by the terms of which all of the property, tangible and intangible, of the constituent corporations was to become the property of the new corporation, which was also to be known as the Lincoln Traction Company. The authorized bond and stock issue of the new corporation is as follows: $1,500,000 of bonds, $250,000 of which were appropriated to retire the bonds issued by the elder traction company and the floating indebtedness; $1,500,000 of preferred stock entitled to a cumulative dividend of 6 per cent. per annum; and $2,000,000 of common stock entitled to the residue of the net earnings of the company. $770,000 of the new bonds were to be exchanged for the $700,000 preferred stock of the elder traction company. Holders of the $330,000 common stock of the elder company were to receive two shares of preferred stock and four shares of common stock in the consolidated corporation for every share of their common stock. The holders of the $415,000 stock issued by the Citizens Railway Company received a like amount of the preferred stock of the consolidated company and $332,000 of the common stock of that corporation. Provision was also made, in accordance with the requirements of the statute, to ascertain the value of and to pay in cash for any stock of either constituent corporation which the holder refused to exchange for stock in the consolidated corporation. The agreement was executed in triplicate, one copy whereof was filed in the office of the secretary of state, and one copy in the office of the county clerk of Lancaster county, and one copy was retained by the consolidated corporation. The agreement was accepted by more than two-thirds of the stockholders of the constituent corporations, and, so far as we are advised, no stockholder or creditor of either corporation has taken any exception to the proceedings. The result of this transaction was to increase by $770,-000 the bonded debt of the combined corporations, to increase by $375,000 the preferred stock, and the common

stock was increased $1,322,000. In other words, before consolidation the gross stock and bonds liability of the constituent companies was $1,695,000, and, immediately after, that liability aggregated $3,747,000, an increase of $2,052,000.

There is considerable evidence concerning the value of the combined properties, and, as might be expected, the opinions are not harmonious, nor, in the view that we take of the case, is that fact material. The sole respondent is the consolidated corporation, sued in its corporate name. By this proceeding the state is estopped in this action to question the corporate existence of the respondent, nor has it made those persons parties upon whom a judgment of ouster could operate. *State v. Uridil,* 37 Neb. 371; *State v. Lincoln Street R. Co.,* 80 Neb. 333.

The state invokes article XI of the constitution to sustain its contention that the stock and bond issues should be canceled and the consolidation adjudged null and void. Among other things, section 3, art. XI, *supra,* forbids the consolidation of the stocks, property, franchises or earnings of two or more railroad corporations or telegraph companies owning competing or parallel lines, and section 5 of that article provides that no railroad corporation "shall issue any stock or bonds, except for money, labor or property actually received and applied to the purposes for which such corporation was created; and all stock, dividends, and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void."

In *City of Lincoln v. Lincoln Street R. Co.,* 67 Neb. 469, 483, it was suggested, but not determined, that these provisions of the constitution do not apply to street railway companies. In the instant case we are of opinion that the point is fairly presented and should be determined. No such limitations appear in the constitution of 1866. It is a matter of common knowledge that many of the provisions of our constitution were taken from the

1870 constitution of Illinois. Sections 3 and 5, art. XI of the constitution of Nebraska, are quite similar to sections 11 and 13, art. XI of the 1870 constitution of Illinois. In 1870 the agitation which gave birth to the granger laws of the western states was active, and the people of Illinois were determined that competition should continue between the common carriers for hire of freight and passengers. These conditions existed in a more acute form in Nebraska in 1875, when our present constitution was adopted. The evils growing out of the circulation of railroad stocks and bonds that had been issued without consideration or for a grossly inadequate consideration were also known in 1870 and in 1875. But, so far as we are advised, street railways were not during those years considered an inviting field for exploitation, and the people of Nebraska gave that subject no more thought than to adopt section 4, art. XI, *supra,* which forbids the general assembly to grant the right to construct or operate a street railway within the limits of any city, town or incorporated village, without the consent of the local authorities having control of the streets and highways of the municipality. As we are advised, but one street railway had been constructed in this state in 1875.

In section 72 *et seq.,* ch. 25, Rev. St. 1866, may be found comprehensive provisions for the incorporation by general law of railroad companies. But it was not until 1877 that the legislature enacted statutes referring specifically to the incorporation of street railway companies. Laws, 1877, p. 135. It is not improbable that theretofore such corporations might have been formed under the provisions of section 123 *et seq.,* ch. 25, Rev. St. 1866, relating generally to corporations, yet in 1867 the territorial legislature granted a special charter to the Omaha Horse Railway Company to construct and operate a street railway in the city of Omaha and within a radius of five miles of its limits. The legislature, by the act of February 25, 1875, purported to grant to the

first corporation that should build and operate a street
railway in any of the cities in Nebraska exclusive fran-
chises for 25 years. 2 Complete Session Laws, p. 884.
In 1875 Omaha was the only city in Nebraska contain-
ing sufficient population to justify the maintenance of a
street railway. At that time there were no evil prac-
tices with respect to street railways to be remedied in
Nebraska and no reason to expand by construction the
popular definition of the word "railroad." In its broad-
est significance that word includes a street railway, but
its meaning depends upon the context and general intent
of the written law in which it is used. *City of Chicago
v. Evans*, 24 Ill. 52. Because the administrative branch
of the government, by a practical construction of a rev-
enue law, had construed the word "railroad" to mean
street railways, the supreme court of Florida so held.
*Bloxham v. Consumers E. L. & Street R. Co.*, 36 Fla.
519, 51 Am. St. Rep. 44. But it is said in substance in
that case, by Liddon, J., that the word generally applies
to commercial railways engaged in the transportation for
long distances of freight and passengers, whereas the
words "street railway" apply solely to railways laid upon
the surface and grade of the street, and so constructed as
not to exclude the public from the use of that part of
the street. In *State v. Duluth Gas & Water Co.*, 76
Minn. 96, 107, Mitchell, J., in classifying street railways
and railroads, said: "Speaking generally, a street rail-
way is local, derives its business from the streets along
which it is operated, and is in aid of the local travel
upon those streets, while a commercial railway usually
derives its business, either directly, or indirectly through
connecting roads, from a large area of territory, and not
from the travel on the streets of those cities, either ter-
minal or way stations, along which they happen to be con-
structed and operated. In fact, so far from being an aid
or advantage, they are a positive impediment to the
travel on such streets." See, also, *Carli v. Stillwater
Street R. & T. Co.*, 28 Minn. 373; *Minneapolis & St. P.*

*S. R. Co. v. Manitou Forest Syndicate,* 101 Minn. 132; *Louisville & P. R. Co. v. Louisville City R. Co.,* 2 Duv. (Ky.) 175; *Lincoln Street R. Co. v. McClellan,* 54 Neb. 672.

The terms of a constitution should be construed according to their plain and ordinary acceptation unless it is evident they were used in a legal or technical sense. *State v. Bacon,* 6 Neb. 286; *State v. Lancaster County,* 6 Neb. 474; *Hamilton Nat. Bank v. American Loan & Trust Co.,* 66 Neb. 67; *Wilcox v. People,* 90 Ill. 186, 196.

Considering the mischief which article XI of the constitution was adopted to remedy, the general history of the state in 1875, and giving the words in sections 3 and 5 of that article their ordinary meaning, we are of opinion that those sections were not intended to, do not purport to, and do not as a matter of law relate to, street railways. These constitutional provisions, therefore, do not authorize the court to dissolve the respondent or to cancel any part of its capital stock.

The relator, however, contends that, if it be conceded that the fundamental law does not authorize a judgment of dissolution, yet for other reasons all of the common stock should in this proceeding be canceled. To sustain this assertion the relator argues that, since the aggregate value of the tangible property of the constituent companies does not amount to the sum of the par value of the preferred stock and the bonds of the consolidated corporation, the directors and stockholders of the constituent and the consolidated corporations committed a fraud upon the public by issuing and delivering the common stock in controversy, that it impairs the credit of the consolidated corporation, permits its affairs to be controlled and managed by men whose interest in its welfare is speculative, and will materially interfere with the proper maintenance and extension of street car service and legitimate rate reductions.

We do not question the right of a court in a proper action to cancel corporate stock issued and delivered

without consideration, or in some instances under such circumstances as to perpetrate a fraud, and this is particularly true of quasi-public corporations, vested by law with power to be exercised for the public welfare, as well as for the stockholders' profit. The law condemns such *ultra vires* acts of those corporations as will seriously impair their ability to properly discharge their public duties. *McCarter v. Pitman, Glassboro & Clayton Gas Co.*, 74 N. J. Eq. 255. But in a proceeding to cancel such watered stock, if the court's judgment is not controlled by statute, the proofs relied on to establish the illegality of the stock should be clear to justify a cancelation, and the fact that property exchanged for stock is not worth in the market the par value of that stock will not ordinarily sustain a finding of fraud. In the instant case the relator's evidence tends to prove that the value of these properties did not in February, 1909, exceed $2,000,000 in value, while the respondent's evidence tended to prove that the properties, tangible and intangible, were then worth $3,300,000. *Memphis & L. R. Co., v. Dow*, 120 U. S. 287; *Sioux City, O. & W. R. Co. v. Manhattan Trust Co.*, 92 Fed. 428; *Wells v. Northern Trust Co.*, 195 Ill. 288, 296. If we accept the state's proof, there is no such discrepancy in values as to justify a judgment canceling the stock. But however this may be, the statute under which the consolidation is said to have been consummated does not in direct language or by fair intendment provide that the stock and bond issue of the consolidated corporation shall not exceed the combined issues of the constituent corporations, nor that the property of the consolidated corporation shall equal in value the par value of its stock and bond issue. This statute invites rather than restricts the inflation of stocks and bonds. If the consolidation was consummated, a new corporation was created. *Ohio & M. R. Co. v. People*, 123 Ill. 467. Should the common stock of the new corporation be canceled, it would be impossible to place the stockholders of the constituent companies in

their former position, because the older corporations for most purposes ceased to exist with the creation of the new corporation, and the agreement between the stockholders would be partially annulled. The owners of the common stock in the constituent companies were willing to exchange it for the stock of the consolidated corporation upon the terms agreed to. Is it within the province of the court to say that they shall trade on other terms? Connected with the contract to exchange was an agreement to permit the holders of preferred stock to barter their holdings for the consolidated corporation's bonds. Would the owners of the common stock of the constituent corporations have been willing to permit that substitution had they known that the terms of the agreement with respect to their stock could not be enforced and would not be respected? It is evident that the court cannot by any process of scaling down the common stock place the holders in the position they occupied before the consolidation. So far as the respondent's ability to serve the public, it owns all of the property devoted by its predecessors to that purpose, and has expended over $200,000 in improving its power plant and in extending its railway, and it is within the power of the railway commission to compel such additional expenditures as may be necessary to afford the public the service it is entitled to from the respondent, and its earnings are ample to pay for such improvements.

Nor will the valuation by implication fixed by the promotors of the consolidation concerning the value of the property of the constituent corporations and of their stocks and bonds bind the railway commission in determining in a proper case the investment upon which the respondent's stockholders should receive a return in the way of dividends, or the exact amount of the charges that may be exacted for transporting passengers. *Smyth v. Ames,* 169 U. S. 466; *San Diego Land & Town Co. v. National City,* 174 U. S. 739, 757; *Covington & Lexington Turnpike Road Co. v. Sandford,* 164 U. S. 578. We

**38**

therefore conclude that the relator has not made out a case justifying the court in these proceedings to direct the cancelation of the common stock.

This brings us to the relator's final contention that the respondent should be ousted from the privileges of distributing and selling electric current for illumination and power purposes, and distributing and selling heat to private consumers. The respondent suggests that, inasmuch as the articles of incorporation of the Citizens' Railway Company are not in evidence, we should presume that they authorize the exercise of those privileges. But the burden was not on the state to produce this proof.

Where an information in *quo warranto* presented by the law officer of the county or of the state charges the respondent with the unlawful exercise of corporate franchises, the answer should be either a disclaimer or a justification. In the latter event, the facts to exonerate the respondent should be pleaded. 32 Cyc. 1455; *State v. Tillma*, 32 Neb. 789. And if the information does not disclose that the state is demanding a forfeiture of franchises at one time legal, the burden is on the respondent. *State v. Davis*, 64 Neb. 499; 17 Ency. Pl. & Pr. 481.

The respondent answered that its remote assignor, the Lincoln Electric Railway Company, acquired light and power franchises, that in 1900 the city of Lincoln granted the earlier traction company franchises for those purposes, and in 1906, when the judgment in *State v. Lincoln Street R. Co.*, 80 Neb., 333, was rendered, the respondent therein had been for several years exercising those franchises. It is contended that the respondent is not acting *ultra vires* in the matters complained of, that the judgment in *State v. Lincoln Street R. Co.* is a bar to this action, not only because of the things adjudged, but that to hold otherwise will permit the state to split its cause of action, and that by inaction the state is estopped to maintain this branch of its case. None of the ordinances or charters pleaded are in evidence. If they were, an interesting question as

to the power of a street railway to accept and enjoy a heating, power or lighting franchise would be presented. The prayer of the information is for a dissolution of the respondent, or, if that relief be not granted, that its common stock and bond issue be canceled, "and for such other relief as the court may find necessary to render effectual its said judgment." Whether the relief contended for in the argument should be granted under this prayer is not discussed in the briefs, and will not be determined. The district judge filed a written opinion giving his reasons for the judgment, and no mention is made of the heat, lighting or power franchise, but his discussion relates solely to dissolving the respondent. In the journal entry, however, the finding is general in the respondent's favor, and the information is dismissed without reservation, so that it is probable, as a matter of law, that the judgment confirms the respondent in the right to exercise those franchises. The discussion of this subject is not satisfactory, and we prefer not to dispose of the law question in this state of the record. There is some evidence tending to prove that the heating plant was constructed by a distinct corporation, and that all of its stock is owned by the Lincoln Traction Company. But a few words of general argument are found in the briefs with respect to this branch of the case.

In *Nebraska Shirt Co. v. Horton,* 3 Neb. (Unof.) 888, we held that, unless authorized by statute, a corporation has no power to subscribe to the capital stock of another corporation. And the rule is applied to a banking corporation in *Bank of Commerce v. Hart,* 37 Neb. 197. Section 9, art. VII, ch. 72, Comp. St. 1907, authorizes street railway companies to subscribe to the stock of another street railway company whose lines of railway connect with those of the subscribing company, but we have not been cited to any statute authorizing street railway corporations to subscribe to the stock of corporations organized for the purpose of transacting any business other than a street railway. We find no reference in either brief to the law on this branch of the case.

As we understand the record, the respondent failed to sustain the burden of establishing its right to exercise heat, light or power franchises, and to this extent the judgment is not sustained by sufficient evidence. The respondent pleads the judgment in *State v. Lincoln Street R. Co.*, 80 Neb. 333, in bar, but an inspection of the record in that case (which we find in the bill of exceptions) discloses that the sole franchise there challenged was the right of the respondent to exist, or to operate a street railway in the city of Lincoln. No mention is made in the pleadings or judgment to light, power or heat franchises. The testimony to support the respondent's right to exercise the franchise of a street railway is not necessary to sustain the other, so not only was there no adjudication of the subject matter of the instant case, but there was no splitting of causes of action. 23 Cyc. 439; *State of Maine v. United States*, 36 Ct. Cl. 531.

Nor are we willing, in the state of this record, to say that the state is estopped by its laches from prosecuting these parts of its complaint. We think these issues should not be determined by us in the state of the record. Some other matters, we deem immaterial to the merits of the case, are referred to in the answer and in the briefs, but we do not believe we are justified in extending this opinion by further reference thereto.

The judgment of the district court is affirmed, in so far as it refuses to dissolve the respondent, or to cancel its bonds or common stock, but, as to all other issues joined by the pleadings, the judgment is reversed and the cause remanded; each party to pay its own costs in this court.

JUDGMENT ACCORDINGLY.

REESE, C. J., not sitting.