VOL. 96]     SEPTEMBER TERM, 1914.          725

State, ex rel. Winnett, v. Omaha & C. B. Street R. Co.

STATE, EX REL. HUDSON J. WINNETT ET AL., RELATORS, V.
OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY,
RESPONDENT.

FILED SEPTEMBER 26, 1914.   No. 17,596.

1. Street Railways: VALUATION: STATUTES: CONSTRUCTION: "RAIL-
ROAD:" "RAILWAY." The words "railroad" and "railway" as used
in the physical valuation act (laws 1909, ch. 107), *held* not to include
street railways.

2. ———: ———: ———: ———: "PUBLIC SERVICE CORPORATION."
Since such act declares that "the term 'public service corporation'
when used in this article shall mean and embrace" certain named
classes of such corporations, no other class of public service corpora-
tion is within its terms.

3. Statutes: CONSTRUCTION. The proper object of a court in constru-
ing a statute is to give effect to the intention of the legislature, and
where the language used in an act is ambiguous, resort may be had
to the history of its passage through the legislature, if this throws
any light on the meaning of the language used therein.

4. ———: ———: PUBLIC SERVICE CORPORATIONS: VALUATION. Where
the legislature has, upon the effort being made therein, refused to
include certain classes of public service corporations in a physical
valuation statute, the court will not include them therein by con-
struction.

Original proceeding in mandamus to compel respondent
to file an inventory of its property with the state railway
commission. *Writ denied.*

*Grant G. Martin, Attorney General,* and *George W.
Ayres,* for relators.

*John L. Webster, contra.*

LETTON, J.

This is an original application to this court made by the
state railway commission for a writ of mandamus to com-
pel the Omaha & Council Bluffs Street Railway Company
to forthwith file with that body a detailed inventory of its
property under the provisions of sections 26-36, art VIII,

ch. 72, Comp. St. 1911, commonly known as the "Physical Valuation Act." It is alleged that the relators ordered the respondent to file such an inventory within 60 days from the date of the order; that it was duly notified of this order, but that it has neglected and refused to furnish the commission with any information whatever regarding the amount, reproduction cost, or value of its property. The defense is that a corporation operating a street railway is not embraced within the terms of the act referred to. The cause was submitted upon the pleadings and upon a stipulation of facts which recites that portions of the line of the respondent run, in one instance, for a distance of about three blocks, and, in another, for a distance of about six blocks, in public highways, outside of the corporate limits of any incorporated city or village, and that in Iowa a portion of the line operated by the company under a lease runs for a distance of about one and one-fourth miles through territory outside of any corporate limits. It is also stipulated that it will cost respondent the sum of $7,500 to furnish the information requested if report is made in the manner requested by the relator.

The determination of the controversy depends upon the scope to be given the provisions of ch. 107, laws 1909 (Rev. St. 1913, secs. 786-795) known as the "Physical Valuation Act." The title of the act is "An act to provide for the physical valuation of railroads and other public service corporations in Nebraska, and to define such corporations, and to provide for the employment of clerical and expert help, and the manner in which expenses incurred in carrying out this bill shall be paid, and to provide penalties for the violation of this act." Sections 1, 2 and 3 are as follows:

"Section 1. The term 'railroad' as used herein shall mean and embrace all corporations, individuals, associations of individuals, their lessees, trustees or receivers (appointed by any court or lawful authority whatsoever) that now or may hereafter own, operate, manage or control any railroad or part of a railroad as a common carrier in this state, or cars or other equipment used thereon, or bridges,

terminals or side-tracks used in connection therewith,. whether owned by such railroad or otherwise.

"Section 2. The term 'public service corporation' when used in this act shall mean and embrace every railroad,. railway, telegraph, express, telephone, and the railroad transportation property of stock-yard companies.

"Section 3. It shall be the duty of the state railway commission to ascertain forthwith, upon the taking effect of this act, the physical value of each railroad and public service corporation in this state within the meaning of this act. The physical value so ascertained shall be the physical value of each of these properties on the first day of July, of the year in which such valuation is ascertained. Provided, that steam railroads shall first be valued according to the provisions of this act, and thereafter other public service corporations in such order to be valued as shall be determined by the state railway commission." .

Section 4 prescribes the manner in which the physical valuation in case of railroads shall be made and what it shall include. The property of railroads is divided by the section into nine different classes or descriptions, and it is provided: "This section shall apply to each railroad in this state separately, and the finding of the commission shall show the total value of each railroad, the number of miles of road and the average value per mile of track," etc.

Section 5 provides for the manner of estimating the "physical value of each telegraph, telephone, express and the railroad transportation of stock-yard companies."

The question presented is whether a street railway company is embraced within the definition of "railroad" or of "public service corporation" as used in the act. The relator concedes that the word "railroad" does not at all times and under all circumstances include within its meaning street railways, and that whether or not they are included within the terms "railway" or "railroad" is to be determined from the context and from the purpose of the act in which the term is used, but contends that, since in fixing rates it is necessary that the commission shall have

728            NEBRASKA REPORTS.            [Vol. 96

State, ex rel. Winnett, v. Omaha & C. B. Street R. Co.

a reasonably accurate knowledge of the value of the property, the necessity for a statement from the company of the property of the street railway company exists just as much as in the case of any other common carrier. Evidently the first section of the act does not define the term "railroad," but uses that word to designate all kind or classes of persons who may be known to operate, manage or control any railroad, or equipment, or bridges, or terminals or side-tracks used in connection therewith. This section, therefore, throws no light upon the problem. Neither does section 2, defining "public service corporation," aid in solving the question. It includes within its definition certain classes of public service corporations, but excludes other classes of such corporations, such as gas, electric light, heating, power and water companies. It does, however, include "every railroad, railway, telegraph, express, telephone, and the railroad transportation property of stock-yard companies." It is to be presumed that the legislature in using language in a statute will give it the same significance that has already been accorded it by the constitution and laws of the state, unless a different meaning is provided in the enactment itself or must be drawn from its context. The question whether street railways are included within the term "railroad" as used in the constitution and statutes of Nebraska had been decided a number of times by this court prior to the enactment of this law.

In *Lincoln Street R. Co. v. McClellan*, 54 Neb. 672, in considering the question whether street railway companies were included in the statute providing that "every railroad company" should be liable for all damages inflicted upon the person of passengers while being transported over its road, this court considered this question, pointed out a number of differences between a street railway and a railroad, and, after quoting and citing authorities, held that such statement had no application to street railways. This was followed in *Omaha Street R. Co. v. Boesen*, 74 Neb. 764. In *State v. Lincoln Traction Co.*, 90 Neb. 535, the question is again considered in construing section 3, art.

VOL. 96] SEPTEMBER TERM, 1914. 729

State, ex rel. Winnett, v. Omaha & C. B. Street R. Co.

XI of the constitution, which forbids the consolidation of the stocks, property, franchise, etc., of two or more railroad corporations owning competing or parallel lines, and it was held that the word "railroad" as used in the constitution does not purport to, and does not as a matter of law, relate to street railways. In a case involving the regulation of rates of this respondent by the interstate commerce commission, a similar question was presented to and so decided by the United States supreme court, with respect to the respondent. *Omaha & C. B. Street R. Co. v. Interstate Commerce Commission*, 230 U. S. 324. While there is a conflict of authority, the cases holding as this court did seem to be in the majority. *Board of Railroad Commissioners v. Market Street R. Co.*, 132 Cal. 677; *Kansas City, O. B. & E. R. Co. v. Board of Railroad Commissioners*, 73 Kan. 168; *Cedar Rapids & Marion City R. Co. v. City of Cedar Rapids*, 106 Ia. 476; *Massillon Bridge Co. v. Cambria Iron Co.*, 59 Ohio St. 179; *Township of Ecorse v. Jackson, A. A. & D. Ry.*, 153 Mich. 393; *In re New York District R. Co.*, 107 N. Y. 42; *Sears v. Marshalltown Street R. Co.*, 65 Ia. 742; *State v. Milwaukee B. & L. G. R. Co.*, 116 Wis. 142; *Gould v. Merrill R. & L. Co.*, 139 Wis. 433.

An investigation of the history of the act in its passage through the legislature shows that at one stage "street car, interurban railway, interurban railroad, stock-yard, electric light, water works and gas company" were all included in the definition of "public service corporation" in section 2. These were afterwards stricken out and the act passed as it now stands. This conclusively shows that it was not the legislative purpose to compel the valuation of such corporations.

WRIT DENIED.

ROSE, J., not sitting.